**UNITED STATES BANKRUPTCY COURT**
**WESTERN DISTRICT OF VIRGINIA**
**Lynchburg Division**

| | | |
|---|---|---|
| In re JANE CURRIER RICHARDSON | ) | Case No. 05-60484 |
| | ) | |
| Debtor. | ) | |
| | ) | |
| UNITED STATES TRUSTEE, | ) | Adversary Proc. No. 05-06040 |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | |
| | ) | |
| JANE CURRIER RICHARDSON, | ) | |
| | ) | |
| Defendant, | ) | |
| | ) | |

## JUDGMENT

After a trial upon the complaint of the United States trustee objecting to the discharge of Jane Currier Richardson, for the reasons stated in the accompanying memorandum, it is

ORDERED that the objections of the United States Trustee to the discharge of Jane Currier Richardson are sustained; and it is further

ORDERED that Jane Currier Richardson, debtor herein, be, and hereby is, denied a discharge from debtor's debts.

Upon entry of this Judgment, the Clerk shall forward a copy to the United States trustee, and Eric D. Andrew, Esq., counsel for the Defendant.

Entered on this   21st   day of February, 2006.

William E. Anderson
United States Bankruptcy Judge

**UNITED STATES BANKRUPTCY COURT**
**WESTERN DISTRICT OF VIRGINIA**
**Lynchburg Division**

| | | |
|---|---|---|
| In re JANE CURRIER RICHARDSON | ) | Case No. 05-60484 |
| | ) | |
| Debtor. | ) | |
| | ) | |
| UNITED STATES TRUSTEE, | ) | Adversary Proc. No. 05-06040 |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | |
| | ) | |
| JANE CURRIER RICHARDSON, | ) | |
| | ) | |
| Defendant, | ) | |
| | ) | |

**MEMORANDUM**

This matter comes before the court on a complaint filed by the United States Trustee to dismiss this adversary proceeding under Section 707 of the Bankruptcy Code or to deny the discharge of Jane Currier Richardson ("the Debtor") under Section 727 of the Bankruptcy Code. This Court has jurisdiction over this matter. 28 U.S.C. § 1334(a) & 157(a). This is a core proceeding. 28 U.S.C. § 157(b)(2)(A)(B)&(I). Accordingly, this court may render a final decision.

*Facts*

In 1989, the Debtor and Thomas F. Murphy formed a joint business venture. The joint venture, incorporated as F&K Security, Inc., is still operational today. F&K Security, Inc., sells

1

and services electronic fire alarm systems.[1]  F&K Security, Inc., owns inventory valued at approximately $1,000.00.[2]  F&K Security, Inc., does not sell on credit; it carries no accounts receivable on its books.[3]

On February 10, 2005, the debtor filed the above-styled petition.  The debtor indicated in her schedules that she was employed as a security specialist by F&K Security, Inc.[4]  She scheduled no real property as property of the estate.  She scheduled no vehicles as property of the estate.   She scheduled no secured claims or priority unsecured claims against the estate.  She scheduled unsecured claims in the total amount of $232,076.00.  With the exception of an advertising debt in the amount of $1,043.00, all of the unsecured debt is owed to credit card companies.  The Debtor's original Schedule F does not indicate that there are any co-obligors on the credit card debt.

In her original Schedule B, the debtor indicated that she owned no "Stock [or] interest in incorporated and unincorporated businesses."[5]   In her Statement of Financial Affairs, the Debtor indicated that Thomas F. Murphy owned 100% of  F&K Security, Inc., on the date of petition, February 10, 2005.[6]  Mr. Murphy passed away on March 25, 2005.[7]

On May 25, 2005, the Debtor amended her Schedule B to indicate that she owned "100%

---

[1]  Debtor's testimony, Transcript of Hearing, page 11, lines 14-15.

[2]  Debtor's testimony, Transcript of Hearing, page 11, lines 23 to page 12, line3.

[3]  Debtor's testimony, Transcript of Hearing, page 12, lines 9-12.

[4]  Debtor's Schedule I.

[5]  Debtor's Schedule B, Question 12.

[6]  Debtor's Statement of Financial Affairs, Question 21.

[7]  Debtor's testimony, Transcript of Hearing, page 14, line 25 to page 15, line 10.

of F&K Security, Inc. (50% actual and 50% in probate from a testamentary document executed by Thomas Frank Murphy)".[8] She valued her 100% interest in the stock at $1.00. She also amended answer 20 to her Statement of Financial Affairs by deleting the disclosure of Mr. Murphy's 100% ownership interest in F&K Security, Inc. She also amended her Schedule F by disclosing an outstanding balance in her line of credit with Wells Fargo Bank in the amount of $45,028.28, thus increasing her total scheduled unsecured debt of $277,104.28.[9] The debtor did not schedule any accounts receivable from F&K Security, Inc., as an asset of her estate, in either her original or amended schedules.

## *Discussion*

The United States Trustee's complaint contains three causes of actions seeking a judgment denying the Debtor's discharge under Section 727(a)(2)-(4). The complaint also contains two causes of action seeking dismissal of this case under Section 707(a) & (b).

A. Denial of Discharge.

The United States Trustee argues that the debtor should be denied a discharge under Section 727(a)(2)-(4) of the Bankruptcy Code. The United States trustee has the burden of proving the objection to discharge. See Fed. R. Bankr. P. 4005. The standard of proof in a discharge action is the preponderance of the evidence. Farouki v. Emirates Bank Intern., Ltd., 14 F.3d 244, 249 (4th Cir. 1994).

**Business Records.** A business debtor is charged with keeping business records and with providing them to the chapter 7 trustee, if asked. Sections 727(a)(3) and (a)(4)(D) will be

---

[8] Debtor's Amended Schedule B, Question 12.

[9] On August 29, 2005, the Debtor filed a second amended petition. The parties have not discussed any additional changes that may have been made in this amendment.

3

considered together. Paragraphs 727(a)(3) & (4) provide:

> a) The court shall grant the debtor a discharge, unless–
>  . . .
>> (3) the debtor has concealed, destroyed, mutilated, falsified, or failed to keep or preserve any recorded information, including books, documents, records, and papers, from which the debtor's financial condition or business transactions might be ascertained, unless such act or failure to act was justified under all of the circumstances of the case;
>> (4) the debtor knowingly and fraudulently, in or in connection with the case--
>>> (A) made a false oath or account;
>>> (B) presented or used a false claim;
>>> (C) gave, offered, received, or attempted to obtain money, property, or advantage, or a promise of money, property, or advantage, for acting or forbearing to act; or
>>> (D) withheld from an officer of the estate entitled to possession under this title, any recorded information, including books, documents, records, and papers, relating to the debtor's property or financial affairs;

11 U.S.C. § 727(a)(2)-(4).

Section 727(a)(3) provides that the debtor shall be denied a discharge if she "has . . . failed to keep or preserve any recorded information, including books, documents, records, and papers, from which the debtor's financial condition or business transactions might be ascertained, unless such act or failure to act was justified under all of the circumstances of the case".

Section 727(a)(4) provides in relevant part that the debtor shall be denied a discharge if she "knowingly and fraudulently, in or in connection with the case . . . withheld from an officer of the estate entitled to possession under this title, any recorded information, including books, documents, records, and papers, relating to the debtor's property or financial affairs".

In this case, the chapter 7 trustee requested that the debtor provide her with the general ledgers of F & K Security, Inc. The debtor failed to do so. When asked by the court whether she had receive all of the documents she requested from the Debtor, the chapter 7 trustee responded as follows:

4

> "No. I had asked for general ledgers, which they never sent. I had asked for credit card statements, and Ms. Richardson testified that she didn't have them, couldn't get them. And there were some other items on the list of documents, I didn't receive them. But based on the information I had at the time, I didn't consider them important enough to hound them for. But I did need the general ledgers. I did not receive those." [10]

The general ledgers must either exist or not exist. If they do exist, then the Debtor's failure to turn them over to the chapter 7 trustee constitutes a violation of Section 727(a)(4)(D). If the general ledgers do not exist, then the Debtor's failure to maintain them constitutes a violation of Section 727(a)(3). And the Debtor has offered no reason for failing to maintain business records. In either event the Debtor's discharge must be denied.

While one might not necessarily expect a consumer to retain her old credit card statements, one would expect someone who had loaned more than $200,000.00 to a closely-held corporation to keep records evidencing those loans. F&K Security, Inc., was a co-obligor on many of the credit card accounts. Any statements of those accounts are necessarily business records. The Debtor's failure to retain her credit card records constitutes a violation of Section 727(a)(3) and additional grounds for denial of the Debtor's discharge.

**False Oath.** Section 727(a)(4)(A) provides that a debtor shall be denied a discharge if he or she knowingly and fraudulently makes a false oath in connection with the case. In this case, the Debtor has attempted to conceal the extent and timing of her ownership interest in F&K Security, Inc. In her original schedules, she indicated that Mr. Murphy owned 100% of F & K Security, Inc. She indicated that they had each owned 50% of the company when it was formed. The chapter 7 trustee testified that the debtor told her at the first meeting of creditors that she had started the business in 1989 with Mr. Murphy and that she had sold her 50% to him in 2002 for $25,000.00. There is no evidence in the record of the transfer or of the payment of $25,000.00

---

[10]  See Transcript of Hearing, page 50, lines 10-22.

5

by Mr. Murphy to the Debtor.

If it is concluded that the Debtor did sell her interest to Mr. Murphy in 2002, it must be asked when did the Debtor regain ownership of F & K Security, Inc.?  Her schedules and amended schedules indicate that she did not own F & K Security, Inc., on the date of petition and further indicate that she regained its ownership only when Mr. Murphy passed away.

Another document, provided to the chapter 7 trustee by the Debtor would seem to support this answer.  The chapter 7 trustee testified that counsel for the Debtor "sent a short, typed agreement.  It's dated September 7, 2004.  It's signed by Thomas F. Murphy.  And it says that he's giving all that is an asset of F&K Security to Jane C. Richardson."

The trustee read the document into the record.

> "This agreement is to give all that is an asset in F&K Security, Inc., to Jane C. Richardson.  Previously Thomas F. Murphy was to be given a certain amount of money that would go to his children upon his death.  This agreement is no longer in play because of the financial conditions of F&K Security, Inc.  Jane C. Richardson upon the death of Thomas Murphy will own all the assets of F&K Security, Inc., with no obligation to pay anything to the heirs of Thomas F. Murphy."[11]

The chapter 7 trustee concluded that this effectively transferred 100% of F&K Security, Inc., to the debtor on September 7, 2004.  Although the document is ambiguous, it could fairly be construed to express an intent on the part of Mr. Murphy to bequeath F & K Security, Inc., to the Debtor upon his death.[12]

The Debtor testified that as of the date of petition, she "had sold [her] part [of F&K Security, Inc.] to Frank, or Mr. Murphy.  And then within a few months, at that point I had - -

---

[11]    Transcript of Hearing, page 50, line 23 to page 51, line 23.

[12]    This court need not, and does not, determine the intentions of the parties as memorialized by the document.  This court need only examine the implications of the two interpretations.

then within a few months he gave it back to me."[13] She testified that the sale to Mr. Murphy was memorialized in writing, but that the gift back to her was not.[14] The Debtor's testimony could be interpreted to mean one of two things.

First, her testimony, construed generously, could be interpreted to mean that she sold her share of F & K Security, Inc., to Mr. Murphy and that she regained it upon his death. It requires that the phrase "within a few months" be interpreted to mean "within a few months of the date of petition", not "within a few months of the date of the transfer to Mr. Murphy". So, one could conclude from the above that the Debtor sold her 50% share of F & K Security, Inc., to Mr. Murphy in 2002 and reacquired it by gift and by bequeath upon his death post-petition. Under this first interpretation of the debtor's statement under oath, one must conclude that the debtor did not own an interest in F & K Security, Inc., on the date of petition.

There is, however, a problem with this interpretation. In her federal income tax return for the tax year 2003, the Debtor claimed that she owned 50% of F & K Security, Inc.[15] In her federal income tax return for the tax year 2004, she also claimed that she owned 50% of F & K Security, Inc.[16] In each of these years, the Debtor claimed a loss on her federal income tax returns which was equal to one-half of the loss experienced by F & K Security, Inc. She claimed a loss in the amount of $16,839.00 which she offset against her 2003 income[17] and claimed a loss

---

[13]   Debtor's testimony, Transcript of Hearing, page 16, lines 9-12.

[14]   Transcript of Hearing, page 16, lines 17-19.

[15]   See Plaintiff's Exhibit #4, Schedule K-1 (Form 1120s), page 1.

[16]   See Plaintiff's Exhibit #5, Schedule K-1 (Form 1120s), page 1.

[17]   See Plaintiff's Exhibit #4, Schedule E (Form 1040).

7

in the amount of $19,365.00 which she offset against her 2004 income.[18]

So, if the Debtor did sell her share of F & K Security, Inc., to Mr. Murphy in 2002, and only regained that share post-petition, on March 25, 2005, she would not have owned 50% of it from 2002 through March 25, 2005. But, she asserted a 50% ownership of F & K Security, Inc., on her 2003 and 2004 income tax returns. Because those documents were provided to this court after having been filed with the Internal Revenue Service under the penalty of perjury, they would constitute a false oath in connection with this case if the Debtor did not in fact own 50% of F & K Security, Inc., during those two years.

Second, the Debtor's statement above that she sold her 50% share to Mr. Murphy and he gave it back to here within a few months could mean that he gave it back to her within a few months of the sale, which by her own testimony occurred in 2002. Under this interpretation of her statement under penalty of perjury, the Debtor must have owned 50% of F & K Security, Inc., on the date of petition. Furthermore, she must have known that such was the case. Under this interpretation of her statement, the Debtor made a false oath in connection with this case when she asserted in her original Statement of Financial Affairs that Mr. Murphy owned 100% of F & K Security, Inc.

Under either interpretation of the facts, the Debtor knowingly and fraudulently made a false oath in connection with this case. The Debtor's discharge will be denied under Section 727(a)(4)(A) of the Bankruptcy Code.

**Disclosure of Assets.** The United States trustee first argues that the Debtor should be denied her discharge because she failed to disclose assets of the estate. Section 727(a)(2)

---

[18]     See Plaintiff's Exhibit #5, Schedule E (Form 1040).

provides:

    a) The court shall grant the debtor a discharge, unless–

   . . .

        (2) the debtor, with intent to hinder, delay, or defraud a creditor or an officer of the estate charged with custody of property under this title, has transferred, removed, destroyed, mutilated, or concealed, or has permitted to be transferred, removed, destroyed, mutilated, or concealed--

           (A) property of the debtor, within one year before the date of the filing of the petition; or

           (B) property of the estate, after the date of the filing of the petition;

11 U.S.C. § 727(a)(2)-(4).

Section 727(a)(2) provides that a debtor's discharge may be denied if he or she attempts to place property of the estate beyond the knowledge or administration of the trustee post-petition or during the one-year period pre-petition. The United States Trustee asserts that the Debtor has committed at least two acts that constitute a violation of Paragraph 727(a)(2).

First, pre-petition, the Debtor and her husband conveyed their ownership interest in their residence, which they held as tenants by the entirety, to the Debtor's husband individually. Because the Debtor could have exempted the residence from her creditors prior to the conveyance[19], the act did not constitute a violation of Section 727(a)(2). The chapter 7 trustee acknowledged that she would not have been able to administer the residence even if the transfer had not occurred. Furthermore, the United States trustee did not argue that the Debtor violated Section 727(a)(2) either at trial or in his post-trial brief. The Debtor's discharge cannot be denied under Section 727(a)(2).

Second, there is strong evidence that the debtor failed to schedule accounts receivable

---

[19] In Virginia, a tenancy by the entirety may be exempted by a debtor from creditors who do not hold a joint claim against both tenants. See Bass v. Thacker, 5 B.R. 592 (Bankr. W.D. Va. 1980) and Ragsdale v. Genesco, Inc., 674 F.2d 277 (4th Cir. 1982). The debtor did not schedule any joint claims with her husband..

from F & K Security, Inc.  F & K Security, Inc.'s, balance sheets for the years ended 2003 and 2004 indicate that loans from shareholders increased from $15,791.00 on December 31, 2003, to $223,164.00 on December 31, 2004.[20]  This represents an increase of $207,373.00.  The Debtor testified that most of her unsecured debt ($277,104.28) was incurred for the benefit of F & K Security, Inc.[21]   It follows that a great portion of the "loans from shareholders" on F & K Security, Inc.'s balance sheets constitute debts payable to the Debtor, which are assets of the Debtor.   These debts owed to the Debtor by F & K Security, Inc., do not, however, appear as assets on the debtor's schedule B.  The Debtor, even after filing two sets of schedules did not disclose these receivables as assets of the estate.

The Debtor was evasive when questioned regarding this potential asset.  At the hearing, the following exchange occurred between the debtor and counsel for the United States trustee.[22]

> Q     [By the United States trustee] Now, I'm going to pursue this a little further.  On that accounts receivable there is value of, you said, zero.  Did F&K owe you any money at the time this schedule was prepared?
>
> A     [Debtor] No.
>
> Q     Isn't it true that you and/or Mr. Murphy in the past have loaned substantial sums of money to F&K?
>
> A     Correct.
>
> Q     And isn't it also true that F&K thereby owed you a substantial amount of money when these documents were prepared and filed?
>
> A     Correct, when they were filed.  You are correct.
>
> Q     So this is not correct?

---

[20]    See Plaintiff's Exhibits #7 and #8.

[21]    Debtor's testimony, Transcript of Hearing, page 17, line 6 to page 19, line 1.

[22]    Transcript of Hearing, page 17, lines 6-21.

A    This I didn't understand, yes.

Nor is it relevant that the receivables may have been worthless.  It is for the Court to determine whether a debtor's assets have value.  It is for the Debtor to disclose them.

B. Dismissal.

The United States Trustee also brings this adversary proceeding to dismiss this case for bad faith under 11 U.S.C. § 707(a) or for substantial abuse under 11 U.S.C. § 707(b) for substantial abuse.[23]  In his post-trial brief, the United States Trustee argues only that the Debtor's

case should be dismissed on the grounds of bad faith.  While there is much in the record evidencing bad faith, this case shall not be dismissed so the that trustee may administer assets if possible.  If there are no assets for the trustee to administer, then the case may be closed in the normal course.  Because the Debtor has been denied her discharge, permitting the case to remain pending will not benefit to the Debtor but may benefit her creditor's.

### *Conclusion*

---

[23]    Section 707 provides:
(a) The court may dismiss a case under this chapter only after notice and a hearing and only for cause, including--
  (1) unreasonable delay by the debtor that is prejudicial to creditors;
  (2) nonpayment of any fees or charges required under chapter 123 of title 28; and
  (3) failure of the debtor in a voluntary case to file, within fifteen days or such additional time as the court may allow after the filing of the petition commencing such case, the information required by paragraph (1) of section 521, but only on a motion by the United States trustee.

(b) After notice and a hearing, the court, on its own motion or on a motion by the United States trustee, but not at the request or suggestion of any party in interest, may dismiss a case filed by an individual debtor under this chapter whose debts are primarily consumer debts if it finds that the granting of relief would be a substantial abuse of the provisions of this chapter. There shall be a presumption in favor of granting the relief requested by the debtor. In making a determination whether to dismiss a case under this section, the court may not take into consideration whether a debtor has made, or continues to make, charitable contributions (that meet the definition of "charitable contribution" under section 548(d)(3)) to any qualified religious or charitable entity or organization (as that term is defined in section 548(d)(4)).

The Debtor has failed to provide records and information sufficient to permit the chapter 7 trustee to execute her duties for the benefit of creditors, has made a false oath in connection with this case and failed to disclose assets. In doing so she has violated the requirements of 11 U.S.C. § 727(a)(2)-(4). The Debtor shall be denied her discharge.

An appropriate judgment shall issue.

Upon entry of this Memorandum, the Clerk shall forward a copy to the United States Trustee, and Eric D. Andrew, Esq., counsel for the Defendant.

Entered on this  21st  day of February, 2006.

_____

William E. Anderson
United States Bankruptcy Judge